1    IN THE UNITED STATES DISTRICT COURT

2    DISTRICT OF UTAH

3    CENTRAL DIVISION

4

5    UNITED STATES OF AMERICA,        )

6                Plaintiff,           )

7    vs.                             )   Case No. 2:23-CR-140-TC

8    LAWRENCE CHRISTOPHER JONES,      )

9                Defendant.           )

10   _____)

11

12

13   BEFORE THE HONORABLE TENA CAMPBELL
     ----------------------------------

14                May 29, 2025

15

16                Sentencing

17

18

19

20

21

22

23

24

25

1

2                    A P P E A R A N C E S

3

4

    For Plaintiff:              BRIAN J. WILLIAMS
5                               111 South Main Street
                                Suite 1800
6                               Salt Lake City, Utah

7

8

9

10

11

12

    For Defendant:              BENJAMIN HAMILTON
13                              46 West Broadway
                                Suite 110
14                              Salt Lake City, Utah

15

16

17

18

19

20  Court Reporter:             Ed Young
                                351 South West Temple
21                              Room 3.302
                                Salt Lake City, Utah 84101-2180
22                              801-328-3202
                                ed_young@utd.uscourts.gov
23

24

25

1    May 29, 2025                                    2:00 p.m.

2                        P R O C E E D I N G S

3

4              THE COURT:  Please be seated.

5              We're here today in two matters involving United

6    States versus Lawrence Christopher Jones.

7              Are you Mr. Jones?

8              MR. JONES:  Yes, ma'am.

9              THE COURT:  He is here with his attorney, Mr.

10   Hamilton.  For the U.S. we have Mr. Brian Williams.

11             The matters that we have are, first of all,

12   violation allegations in 21-CR-00130, and then the

13   sentencing, a straight sentencing, in 23-CR-00140.

14             Let's go forward and begin with the 21-CR-130

15   case.

16             Mr. Hamilton, if you and your client would come on

17   up to the podium, please.

18             Sir, raise your right hand and be sworn.

19                   LAWRENCE CHRISTOPHER JONES

20              Having been duly sworn, was examined

21                   and testified as follows:

22             THE COURT:  The first allegation is that on

23   January 30th, 2023, you submitted a urine sample which

24   showed you had been using methamphetamine.

25             Is that accurate?

1          MR. JONES:  Yes, ma'am.

2          THE COURT:  The next one is on February 14th,

3     2023, you signed an acknowledgment form admitting to using

4     methamphetamine on or about February 10, 2023.

5          Is that accurate?

6          MR. JONES:  Yes, ma'am.

7          THE COURT:  The third allegation is on

8     February 20, 2023, you submitted a urine sample which showed

9     you had been using methamphetamine.

10          Is that accurate?

11          MR. JONES:  Yes, ma'am.

12          THE COURT:  The fourth is on March 9, 2003 you

13     failed to successfully complete a mental health evaluation

14     as directed by your probation officer.  Is that accurate?

15          MR. JONES:  Yes, ma'am.

16          THE COURT:  Number five, on March 9, 2023, you

17     committed the crime of possessing a firearm.

18          Is that true?

19          MR. JONES:  I deny.

20          THE COURT:  Okay.  Number six, on or about

21     March 9, 2023, you committed the crime of possessing

22     methamphetamine with the intent to distribute.

23          Is that accurate?

24          MR. JONES:  Yes, ma'am.

25          THE COURT:  Okay.  I find that you have violated

the conditions of your supervision as set forth in
allegations one, two, three, four and six and you deny
number five.

Probation, does that make any difference, do you
believe, in the sentence or in the proceedings?

PROBATION OFFICER:  No, Your Honor.

THE COURT:  All right.  Government, does that in
any way change how you plan to proceed?

MR. WILLIAMS:  No, Your Honor.  I think we can go
forward and we can even dismiss that allegation.

THE COURT:  All right.  Then I'm simply going to
dismiss or strike number five.

The range for this matter, I gather, is -- what do
you figure it to be, Probation?

PROBATION OFFICER:  Your Honor, that would be 33
to 41 months in custody.

THE COURT:  Do you agree that it is 33 to 41
months, Mr. Hamilton?

MR. HAMILTON:  Which range are we talking about,
Your Honor?

THE COURT:  For the violation in the '21 case.

MR. HAMILTON:  We would not object that the policy
statement indicates in the table that that is a suggested
option for the Court.

THE COURT:  33 to 41 months.

1        What do you think about it, United States?

2        MR. WILLIAMS:  The United States would agree with

3   that range, Your Honor.

4        THE COURT:  Okay.  Now, there are various

5   documents that have been floating around in this case:  The

6   presentence investigation, the U.S.'s memorandum, and now we

7   have the new -- well, not new, but the recently received by

8   me, like this morning, neuropsychological evaluation.

9        From all of these documents it is my intention --

10  first of all, I want to listen to what you have to say, but

11  I have been thinking about a term of 60 months with

12  supervision of three years on the '23 case, and then 33 to

13  41 in custody to be served consecutively, which would make

14  for a total of 60 months, or I am open to perhaps lower.

15       Let me hear what you have to say, Mr. Hamilton.

16       MR. HAMILTON:  I don't know that we addressed the

17  calculation of the guidelines for the new offense, Your

18  Honor.

19       THE COURT:  I know you believe -- it is

20  concurrent.  Yes, concurrent.

21       You believe that it should be perhaps 51 months,

22  am I correct, for the new offense?

23       MR. HAMILTON:  For the new offense based on our

24  objection to the drug quantity, because the drug quantity

25  included packaging and is so close to the cutoff --

1          THE COURT:  Right.

2          MR. HAMILTON:  -- so I raised the objection, which

3     places the burden on the government to prove to the

4     contrary, and I believe that the government is in agreement

5     with us.

6          THE COURT:  Would you object, United States, to a

7     sentence of 51 months in the '23 case to be followed by the

8     33 months concurrently?

9          MR. WILLIAMS:  No, Your Honor.

10          In fact, that is what we recommended in our

11     sentencing memorandum that we filed.

12          THE COURT:  How do you feel about that, sir?

13          MR. HAMILTON:  If I can present an alternative --

14          THE COURT:  I will certainly listen to any

15     alternative.

16          MR. HAMILTON:  Thank you.

17          If I could indulge the Court in referring to the

18     psychological evaluation that we provided late this morning,

19     and --

20          THE COURT:  Yes.  Okay.

21          MR. HAMILTON:  -- I apologize for that.  I was

22     under the false impression that I had already provided it,

23     and then as I was reviewing things for this afternoon's

24     hearing, I realized that I had neglected to do that.

25          THE COURT:  United States, do you have it?

1          MR. WILLIAMS:  Yes, Your Honor.  In fact, we have

2     had it for some time and it was part of our negotiations in

3     this case.

4          THE COURT:  So it was just me who got it late?

5          MR. HAMILTON:  It was you and the probation office

6     that got it late.  I apologize.

7          Knowing that I had sent it to him, I just had a

8     false memory that I had taken care of it.

9          THE COURT:  Understandable.  There are a lot

10    documents and a lot of documents flying around here.

11         MR. HAMILTON:  Thank you.  Thank you for your

12    understanding, Your Honor.

13         Page 16 of 22, if I could ask the Court to refer

14    to that page, in the last paragraph there -- I'm going to be

15    reading some language from that.  Before I do so, I just

16    want to talk a little bit about Mr. Jones' history.

17         He was a good student as a child and was doing

18    well in life until he was struck by a car at age 10 and was

19    in a coma for over a month and hospitalized for a time after

20    that.  He had to learn how to do basic skills like walking

21    and talking again.

22         From that moment on that brain injury that he

23    suffered from he has not been the same bright, capable child

24    that he was at that time.  It has plagued him with issues,

25    with substance abuse and consistent criminal activity, going

from being locked up to being released, to being homeless, to using drugs on the street to self-medicate from the issues that he struggles from with the schizoaffective bipolar disorder, which I believe stems from the head injury and other head injuries that he has had that probably stemmed from just his inability to cope and then getting in fights and things and getting injured.

It is a consistent and persistent revolving door for him because we are not addressing the underlying issues of his real problems. Therefore, if it is just time and then back out without a plan, he is going to be back before the Court based on his history.

When I had him on the case that started in 2020 and has the 2021 case number, my initial interactions with him is I perceived a mental health issue at that time. There was a lot of hostility and a lot of frustration on his part and a lot of distrust. And because there was a potential serious search issue, we were able to resolve the case in a favorable way, and I didn't want to take the time, knowing that he would be locked up during that time, and I wanted to resolve it more quickly.

With this case and knowing that there were not the legal issues that presented themselves, there was time to get the records. He has been incarcerated now since March of 2023, because it has been so difficult to try to gather

1  all of the records that were needed to do a meaningful

2  evaluation of him, which we now have.

3       That is the reason this case has lingered for so

4  long is a real desire to gather the information that we need

5  to present to the Court so that we can have the best result

6  for society, because a good result for Mr. Jones is a good

7  result for everybody.  If he is dealing with the issues that

8  cause him to recidivate and be back before the Court, then

9  everybody is safer and he is a healthy human being.

10       That paragraph that I referred to the Court on

11  page 16 of 22 of the evaluation says, "Mr. Jones displays a

12  cyclical lifestyle of substance abuse and homelessness

13  coupled with incarceration."  That is exactly what I just

14  went through.  "He has likely been unable to remain stable

15  when released into the community due to his schizoaffective

16  symptoms, which probably worsen when he is experiencing

17  increased stress due to being homeless and abusing elicit

18  substances."  That is the cycle of repeatedly coming back

19  before the Court.  "He appears to have a history of

20  medication and treatment noncompliance within the

21  community."  That is something that we can address today.

22       Going down a few lines lower, it says,

23  "However" -- at the end of the middle paragraph and in one

24  of the lines in the middle of the paragraph, "However it is

25  more likely" -- let me go a line above.  "His memory

1    problems may effect his ability to learn and remember

2    information in various environments and could effect his

3    ability to work.  However, it is more likely that his

4    cyclical incarcerations are due to him not following up with

5    or the lack of available mental health treatment and stable

6    housing when in the community, resulting in relapsing on

7    elicit substances and subsequent legal violations."

8         The last sentence of that starts at the third line

9    up from the bottom:  "When in the community Mr. Jones would

10   benefit from being away from communities who have high

11   substance abuse, gang involvement or other negative

12   influences, as well as access to stable housing,

13   psychotherapy, psychotropic medication management and other

14   supportive services."

15        My thoughts and feeling on this are if we do the

16   same thing that we have always done of just incarcerating

17   him with supervision without the plan of how to address that

18   specifically, it is going to be a repeated cycle, even

19   though, as I was saying, when I represented him three years

20   ago -- four years ago, almost five years now, he was a very

21   different person than he has been on this occasion.

22        On this occasion he has been nothing but patient

23   and approachable and reasonable in my communications with

24   him.

25        THE COURT:  What accounts for the change, do you

1  think, Mr. Hamilton?

2         MR. HAMILTON:  I think part of it is age and part

3  of it is a trust that I have earned with him.  I mean, even

4  going through this report has been an issue.  Part of the

5  schizoaffective disorder is distrust and fear and listening

6  to the voices and feeling threatened if he does not listen

7  to the voices.

8         THE COURT:  Are the voices within?

9         MR. HAMILTON:  Yes.

10         He needs help managing that.  We have a good

11  relationship.  He is nothing but pleasant with me at this

12  point.  It was a rough go when we first started and it is

13  not anymore.

14         I have a plan that I would like to present to the

15  Court, but it is a plan that has not been fleshed out.

16  There is a program in Salt Lake, the Valley Behavioral

17  Health Epic Program.  The Epic Program is a dual diagnosis

18  program and it goes on for several months.  I am not sure of

19  the exact period of time that they have them inpatient doing

20  treatment, but I think it is approximately a six-month

21  minimum program.

22         THE COURT:  Six months inpatient?

23         MR. HAMILTON:  Inpatient.

24         Then it transitions to housing and they help the

25  person find the housing and get the housing in a sober and

1  safe environment.  Then they continue to do aftercare, and

2  that goes on for some time.  It could be quite an extended

3  period of time for a couple of years.

4         THE COURT:  Who pays for it?

5         MR. HAMILTON:  Medicaid -- at least if we

6  continue to -- I'm sorry.  I don't mean to be glib and laugh

7  at our plight that we are in currently.  Assuming that that

8  continues, he would be Medicaid eligible.  Also, with this

9  evaluation and the opinions in here by this expert, he may

10  be eligible to start applying for Social Security

11  disability, and that may help with that as well.

12         These are things that we don't have in place --

13         THE COURT:  Right.

14         MR. HAMILTON:  -- but he has been in custody for

15  26 and a half months.  When you add the credit for good time

16  that he would be eligible for, it would be approximately 29

17  and a half months credit, so close to 30 months that he has

18  been in already.

19         What I would like to suggest to the Court is to

20  take the sentencing under advisement and not impose it yet.

21  If the Court is inclined to allow him to go into the Epic

22  Program, and if that is the case, the social workers in my

23  office will work to get him admitted and get bed space lined

24  up, which, from what I understand currently, the waiting

25  time for the bed is approximately three months.

1          THE COURT:  Where would he be?

2          MR. HAMILTON:  Incarcerated.

3          THE COURT:  Okay.  How?

4          MR. HAMILTON:  We would postpone the imposition of

5     sentence and that way he would continue to remain in

6     marshals's custody until the sentence were imposed.  We

7     could then ask for credit for time served at that point, and

8     it might take us a month to get things lined up and then

9     three months of a waiting period, and it may be four months

10    down the road before we have a bed for him to go to.  We

11    could then inform the Court at that time and ask to come

12    before the Court for a hearing for the final imposition of

13    the sentence and the issuance of the order of release

14    directly into the program, where they would pick him up from

15    the marshal's office the next day.

16         I believe this is the best chance he can have to

17    manage this, and we would ask for an order requiring that he

18    take the medication that is prescribed.

19         THE COURT:  Now, who is going to be prescribing

20    that?  Is that once he gets into the program?

21         MR. HAMILTON:  Once he gets into the program, they

22    will work with him.  They have psychiatrists on staff that

23    would evaluate him, and with this guidance that they have.

24    They would be able to know more directly how to address him

25    and his sensitivities in treatment and the trust issues that

1    he has with treatment providers.

2         With that valuable information, they can then be

3    patient enough with him to work through any issues of trust,

4    as he is capable of doing as demonstrated with his

5    relationship with me.

6         That is our request.  I know it is an unusual

7    request, especially in light of how much time he could be

8    doing, but it is one that I think is best suited not just

9    for him, but in the interest of society as a whole to

10    address the issues that he has.

11         If he violates we can always be back here.  I have

12    confidence in where he is currently and his desire to

13    change.  He said doing time is easy.  For him it is because

14    when he is out he does not have a real support system and he

15    ends up homeless because of the mental health issues that he

16    has.

17         THE COURT:  Does he have any support system?

18         MR. HAMILTON:  None to speak of.  He has a couple

19    of children from two different women, and I think he has

20    decent relationships with both of those women.

21         Is that true?

22         MR. JONES:  We are cordial.

23         MR. HAMILTON:  Cordial.  That may be the best he

24    can do is to be cordial with the issues that he struggles

25    with as a result of his lifelong head injury and

1    difficulties.

2           That is our request, to postpone the sentencing,

3    if the Court is inclined to consider allowing him to go into

4    the Epic Program, and we then would inform the Court as soon

5    as that's available so that we can have a hearing for the

6    imposition of time served and --

7           THE COURT:  Where would he remain, in the jail?

8           MR. HAMILTON:  Yes, where he is now, probably at

9    the Weber County Jail through the marshal's custody until

10   that time, until the Court actually imposes the sentencing

11   releasing him.

12          THE COURT:  I think there might be some problems.

13          Are we still having problems with space in jails,

14   Marshal?

15          UNITED STATES MARSHAL:  Yes, Your Honor.

16          THE COURT:  That is one of the problems.

17          MR. HAMILTON:  Yes.  The alternative is just time

18   and hope.

19          THE COURT:  Let me talk to probation.

20          MR. HAMILTON:  Would you like us to have a seat,

21   Your Honor?

22          THE COURT:  Yes.  Would you?

23          MR. HAMILTON:  Thank you, Your Honor.

24          (Discussion off the record at the bench.)

25          THE COURT:  Mr. Williams, what do you think about

1  all of this, sir?

2        MR. WILLIAMS:  Well, Your Honor, I mean, I am

3  familiar with the Epic Program from my time as a state

4  prosecutor.  It can work, but it also can not work.

5        THE COURT:  Sure.

6        MR. WILLIAMS:  We typically see it work for a

7  while while they are in custody -- not in custody, inpatient

8  and they are taking their meds, but the problem comes when

9  they are released and whether they continue to do so.  My

10  preference is just to go forward with the sentencing.  I

11  just think there are a lot of unknowns about this.  It

12  sounds like it could be a good program or it could not be a

13  good program, and I don't hear a ton of detail about it

14  being set up.  Those are my main concerns.

15        THE COURT:  Right.

16        MR. WILLIAMS:  We have given him credit for some

17  of the issues that the defendant has dealt with in his life

18  in the way we have structured what we recommended as our

19  sentence in this case.  We took away the minimum mandatory

20  sentence.  A lot of that was in recognition that he has had

21  a tough life, despite his criminal history and the lengthy

22  amount of time that he has been in custody.

23        Our preference is to go forward with the sentence

24  and sentence him to the 51 months.  Ultimately, it is up to

25  Your Honor and it is in your discretion.  That is why we

1    structured our recommendation this way, so they can make

2    their recommendation and we can make ours and it will be up

3    to Your Honor.

4              THE COURT:  Okay.

5              MR. HAMILTON:  May I make one more recommendation?

6              THE COURT:  Of course you may.

7              MR. HAMILTON:  It just occurred to me that another

8    possibility, so that the Court has the full ability to

9    impose whatever sentence, even the 51 months that the

10   government is recommending, is to do a probationary sentence

11   with the condition being that he successfully enter into and

12   complete the Epic Program and aftercare.  That could be a

13   five-year period of probation, a lengthy period of

14   overseeing him and making sure he is complying with those

15   conditions.

16             That way if there is a violation and if there is a

17   failure to thrive, it is not just a supervised release

18   violation limited by a statutory maximum period of time, but

19   the imposition of the full period of the sentence.

20             THE COURT:  Thank you.

21             I tell you what I'm going to do.  I am going to

22   continue the sentencing for three months, the sentencing

23   hearing, and I will get a date from Ms. Ford in a moment.

24             In the meantime I'm going to ask you, Mr.

25   Hamilton, to prepare a -- I am not inclined to probation.  I

1   prefer the idea of putting your client in a program.

2           MR. HAMILTON:  A condition of the probation would

3   be the program.

4           THE COURT:  Right, but I am inclined to sentence

5   him to a certain time with supervised release.  I would like

6   you to explore the conditions and the program, such as if

7   you can get him in and then how long to get me -- which, of

8   course, you'll give to probation and the United States -- a

9   fairly detailed proposal for sentencing.

10          How long would it take?

11          MR. HAMILTON:  I can get that done.  I imagine

12  with this evaluation done --

13          THE COURT:  Yes.

14          MR. HAMILTON:  -- we can have one of our mental

15  health social workers that deal with the program directly do

16  the admission for them and the plan, and we could present

17  that to the Court in written format.  Getting that ready

18  should probably only take about three or four weeks.

19          THE COURT:  All right.

20          MR. HAMILTON:  From there it is just a matter of

21  bed space availability.  So if we scheduled the sentencing

22  and come back for sentencing in three months, we could have

23  that submitted to the Court after about a month.

24          THE COURT:  What is after a month?

25          MR. HAMILTON:  Yes.  As soon as a bed is

1  available, we could let the Court know.  If it looks like at

2  the three-month mark when we have it scheduled, if they

3  don't have a bed space available, we can try to get an idea

4  from them at that point how much longer it might be, so we

5  can try to schedule the sentencing at that time or

6  reschedule the sentencing at that time.

7          THE COURT:  I think I have to set a sentencing

8  date and I'm going to do it in about three months.  It can

9  always change.

10         MR. HAMILTON:  Thank you.

11         THE COURT:  I am going to direct that you prepare

12  as detailed of a proposal as you can about what this program

13  would consist of.

14         MR. HAMILTON:  Understood.

15         THE COURT:  Then, United States, do you want a

16  chance to oppose or respond or weigh in in any way?

17         MR. WILLIAMS:  Yes.

18         Certainly, Your Honor, I will review it and then

19  decide where we are headed, but I think it makes sense and

20  that will give me enough time.  If he gets it done in a

21  month, I can look at it and file something.

22         THE COURT:  In two weeks, do you think?

23         MR. WILLIAMS:  What, Your Honor?

24         THE COURT:  Two weeks after receipt?

25         MR. WILLIAMS:  Yes, that will be fine.

1          THE COURT:  Within a month, Mr. Hamilton, get me a

2    comprehensive proposal for sentencing of your client.  Then

3    two weeks after you receive it, United States, get back to

4    me with any objections or thoughts that you have.

5          Yes, Mr. Hamilton?

6          MR. HAMILTON:  Just to be clear, so the proposal

7    for sentencing is it would be what the program entails and

8    what they address and how long they take to do it --

9          THE COURT:  Right.

10          MR. HAMILTON:  -- and that kind of information as

11    opposed to a sentencing memorandum?

12          THE COURT:  Well, it is really what is the program

13    and what do you think I should reasonably impose for Mr.

14    Jones.

15          MR. HAMILTON:  Very well.

16          THE COURT:  All right.  Do you have that down,

17    Chris?

18          THE CLERK:  I do.  I am just checking to make sure

19    on a date.  About three months out to reset the sentencing

20    would be the week of August 25th.  We're scheduled to be in

21    trial, but I think --

22          THE COURT:  We can always take an hour off.

23          THE CLERK:  The 26th of August at 1:30.

24          THE COURT:  The burden rests now on you, Counsel,

25    to tell me what you think would be a reasonable sentence for

1    Mr. Jones and what I could do that would fulfill the goals

2    that I am obligated to fulfill.  In other words, think about

3    him and his well being and also the protection of society.

4            Okay?

5            MR. HAMILTON:  Thank you.

6            MR. WILLIAMS:  Thank you, Your Honor.

7            THE COURT:  We'll be in recess.

8            (Proceedings concluded.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25